IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DeWayne Grate, #269208, ) | |
| ) | Civil Action No. 3:07-1030-MBS-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Anthony Padula, Warden Lee C.I., ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, DeWayne Grate ("Grate"), is an inmate at the South Carolina Department of Corrections serving a sentence of thirty-five years imprisonment for murder. He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution of the United States. The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC. Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on July 18, 2007. Because petitioner is proceeding pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on July 25, 2007, advising petitioner of his responsibility to properly respond to the motion for summary judgment. Petitioner filed his response on August 20, 2007.

**Procedural History**

A jury found Grate guilty of murdering Casey Billings in Horry County on September 8, 2000. (Res. Mem., Ex. 1). An Anders[1] brief was filed in the South Carolina Court of Appeals through the South Carolina Office of Appellate Defense raising the following issue:

---

[1] Anders v. California, 386 U.S. 738 (1967).

> Whether the judge erred by refusing to allow defense counsel to impeach state's witness Charles Douglas with the fact he had a conviction for giving false information to the police since this directly weighed against his credibility, and was permissible cross-examination?

(App. 483). Grate filed a pro se brief raising thirteen (13) separate issues (Res. Mem., Ex. 3). The appeal was dismissed on June 20, 2002 (Res. Mem., Ex. 4), and the Remittitur was returned on July 23, 2002. (Res. Mem., Ex. 5). Grate did not seek review by the South Carolina Supreme Court.

Soon after Grate filed his direct appeal and long before it was concluded, he filed an application for post-conviction relief ("PCR"). (App. 491). An amended pro se application was filed later stating numerous grounds for relief. (App. 496). An evidentiary hearing at which Grate appeared and testified was held on March 7, 2003. (App. 521). After the hearing, the PCR court issued an order dismissing the application which addressed the claims raised by Grate. (App. 584). A Johnson[2] petition for writ of certiorari was filed in the South Carolina Supreme Court raising the following issue:

> Trial counsel was ineffective in failing to move to dismiss the charges on the ground of preindictment delay.

(Res. Mem., Ex. 8). Grate filed a pro se brief but failed to serve a copy on the State, so it was not a part of the record originally filed in this court. Grate filed a copy of that brief in this court on August 20, 2007. The pro se brief raises the following issue:[3]

> Whether the trial court committed reversible error by allowing the admissibility of perjury testimony?

Before the Supreme Court ruled, Grate filed a "Petitioner's Motion to Remand and Amend Pursuant to Austin." (Res. Mem., Ex. 11). Grate asserted that he had recently discovered that his trial

---

[2]Johnson v. State, 294 S.C. 310, 364 S.E.2d 2001 (1988).

[3]Attached to the brief are what appear to be copies of statements of witnesses.

attorney had a conflict of interest in his representation. The Supreme Court denied the petition for writ of certiorari on October 5, 2005. (Res. Mem., Ex. 12). The Remittitur was returned on October 21, 2005. (Res. Mem., Ex. 13).

The order of dismissal in Grate's first PCR was filed on September 25, 2003. (App. 584). On October 30, 2003, while the appeal of the first PCR was pending, Grate filed a "Successive Application for Post-Conviction Relief" (Res. Mem., Ex. 6). In this application, Grate asserted that (1) he lacked the mental capacity to assist in his defense; (2) the thirty five year sentence exceeded the statutory limitations; and (3) the reasonable doubt instruction was erroneous. The second application was dismissed because it violated the statute of limitations contained in S.C. Code Ann. § 17-27-45(a) and was successive under § 17-27-90. (Res. Mem., Ex. 14 and 15).[4]

## Grounds for Relief

In his present petition, Grate asserts that he is entitled to a writ of habeas corpus on the following grounds:

1. Ineffective assistance of counsel. Trial counsel was ineffective in allowing the Court to tie his hands on the co-defendants testifying against the defendant, pursuant to a deal made by the prosecution. When he had an extensive criminal record, counsel should have at the very leas [sic] asked for a continuance so he could appeal the Courts opinion.

2. Conflict of interest. Petitioner's attorney had prosecuted petitioner in a prior criminal case and did not disclose this to the Court. Petitioner inquired of this and counsel told petitioner Quote "I'm your best bet and it's a conflict of interest."

---

[4]In addition to Grate's unconventional attempts for relief in state court, he has filed three previous § 2254 petitions in this court. See Grate v. Eagleton, 01-4127-24BC; Grate v. Eagleton, 02-2780-24BC; and Grate v. Eagleton, 02-3609-24BC. These cases were dismissed without prejudice and without service of process to allow Grate to exhaust his claims in state court.

3.      Hearsay evidence, error on the Court. The Court and petitioner[']s counsel allowed Detective Merrick to testify to a statement he alledgly [sic] heard the petitioner say, which was attempted to shore up by another officer whose statement was in no way relevend [sic] to Detective Merricks statement.

4.      Prosecutorial misconduct on allowing trial counsel to proceed and not informing Court. The prosecution should have informed the Court that petitioner[']s trial counsel had in the past worked for them and prosecuted the petitioner in a prior case.

## **Discussion**

A.      Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>  (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form

5

of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those race instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing the doctrine does not apply. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time. Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004). It is clear that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Likewise, an attorney's mistake in calculating the filing date of the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Harris, 209 F.3d at 331.

Grate's petition is untimely. When his conviction became final at the conclusion of his direct appeal, Grate had already filed his first PCR action. The first PCR action remained pending until

6

the Remittitur was returned on October 21, 2005. Thus, Grate had until October 21, 2006, to file his petition in this court.[5] The petition is dated March 30, 2007. However, Grate certified that he delivered his petition to the prison mail room for delivery one year before it is dated, i.e., March 30, 2006. (See Petition, p. 15). The record shows that the petition was received by this court on April 17, 2007. The only argument that Grate raises in response to the statute of limitations issue he had "a continuous legal process going." This is insufficient to toll the statute of limitations.

    B.        Procedural Bar

Respondents assert that the second, third, and fourth grounds for relief in the present petition have never been properly presented to the South Carolina appellate courts for review, and they are, therefore, procedurally barred.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

           **1.**        **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

---

[5]The filing of the second PCR by Grate did not toll the statute. Pace v. DiGulielmo, 544 U.S. 408, 414 (2005).

>   (b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>   >   (A)  the applicant has exhausted the remedies available in the courts of the State; or
>   >
>   >   (B)(i)  there is either an absence of available State corrective process; or
>   >
>   >   (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>   (2)   An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>   (3)   A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
>   (c)   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application.  See, S. C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[6]  If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

    **2.       Procedural bypass[7]**

---

[6]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  See discussion below on procedural bypass.

[7]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

12

**5.     Procedure**

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocense. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

With respect to the third ground for relief, admission of hearsay testimony for a detective during trial, Grate explains that he did not previously raise the issue because "he had just had the hearsay rule explained to him." (Petition, p. 9). Grounds two and four are essentially the same. Grate asserts that his trial attorney was previously a member of the Solicitor's office and prosecuted him in an earlier, unrelated case. Grate attempted to seek to return to the PCR court to raise this issue. (Res. Mem., Ex. 11), but the Supreme Court denied his petition for certiorari on his first PCR. (Res. Mem., Ex. 12). However, at that time, Grate's second PCR was pending before the state circuit court. (Res. Mem., Ex. 6). The issue was not included in the application, and Grate made no attempt to amend his application to seek review. See S.C. Code Ann. § 17-27-90. The undersigned concludes that grounds two, three and four in the present petition are procedurally barred and should not be considered by this Court.

C.     Ineffective Assistance of Trial Counsel

Grate's first ground for relief relates to trial counsel's cross-examination of the State's key witness, Charles Douglas. Douglas was at the scene with Grate and left with him after the shooting. Eventually, Douglas was charged with being an accessory after the fact of the murder and testified for the State at Grate's trial. Trial counsel attempted to cross-examine Douglas about his prior record, inconsistent statements to the police concerning the murder, and the fact that he was going

to be allowed to plead to misprision of a felony instead of accessory after the fact. After an objection and a bench conference, the trial court limited the cross-examination in some respects. (App. 344-352). At the PCR hearing, Grate testified:

> I think he should have been, Charles Douglas should have been impeached and Mr. Chrisco should have argued more, more about it than what it was, what it was because he kept, every time he argues he shuts down for a minute, the Prosecutor was arguing, then he argued again, then they keep cutting Chrisco off, and I think – I just don't know on that, that point.

(App. 540).

Grate now asserts that trial counsel was ineffective in cross-examining Douglas and should have moved for a continuance to appeal the Court's ruling that limited cross-examination.

There is a "strong presumption" that trial counsel's "conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. at 689. Inadequate cross-examination will rarely be the basis for a finding of ineffective assistance of counsel. Courts recognize that "most attorneys make some mistakes during cross-examination." Hunt v. Nuth, 57 F.3d 1327, 1333, n.4 (4th Cir. 1995), *cert. denied*, 516 U.S. 1054 (1996). In Hunt, the prisoner presented experts at his PCR hearing to criticize trial counsel's cross-examination. The Fourth Circuit accepted the PCR court's finding that the experts' criticisms "constitute a grading of the quality of counsel's cross-examination. None of the suggested errors or omissions are of such a magnitude as to place the conduct outside of prevailing professional norms." Id.

Further, Grate has cited no authority to continue a state trial to appeal an evidentiary ruling. The issue of trial court error in limitation of cross-examination was raised and rejected in Grate's Anders' brief. (App. 480). The first PCR court considered all Grate's claims of ineffective assistance of counsel and denied the application. (App. 548). The petition for writ of certiorari was

14

denied by the South Carolina Supreme Court. (Res. Mem., Ex. 12).  The undersigned concludes that the South Carolina courts properly applied the <u>Strickland</u> standard to Grate's claims.

## **Conclusion**

Based on a review of the record, it is recommended that respondents' motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

                          Respectfully submitted,

                          s/Joseph R. McCrorey
                          United States Magistrate Judge

February 1, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).